UNITED STATES of America,
Plaintiff,

v.

NYSCO LABORATORIES, INC., a corporation, and Eugene J. Yoss, an individual, Defendants.

No. 60–C–530.

United States District Court
E. D. New York.

March 4, 1963.

See also 26 F.R.D. 159.

Joseph P. Hoey, U. S. Atty., Eastern Dist. of New York, for plaintiff; Martin R. Pollner, Asst. U. S. Atty., of counsel.

Bass & Friend, New York City, for defendants; Solomon H. Friend, New York City, of counsel.

BRUCHHAUSEN, District Judge.

The plaintiff moves for summary judgment.

This action was instituted, pursuant to 21 U.S.C. § 321 et sequa, to enjoin the defendant corporation and its president, Eugene J. Yoss, and those in participation with them from introducing into interstate commerce a certain drug containing phenylpropanolamine hydrochloride. The plaintiff, in its complaint, alleges that the labeling, accompanying the

drug, represents and suggests that it is adequate and effective in weight reduction and control by curbing the appetite, as an adjunct in the control of obesity and that such statements are false and misleading.

The statutes, 21 U.S.C. §§ 321, 331, 332 (a) and 502 empower the appropriate district court to grant an injunction against false or misleading labeling of drugs. Such labeling is termed misbranding.

Approximately twelve in rem actions were instituted by the Government in various district courts for the seizure and forfeiture of large quantities of the drug located within those jurisdictions. Pursuant to the libels, the drugs were seized by and now are in the possession of the Marshals. All of the cases were transferred to the District Court of New Jersey for disposition. The case of United States v. 60 28-Capsule Bottles, etc., Unitrol, D.C., 211 F.Supp. 207 was chosen as being representative of the others and tried before Judge Thomas F. Meaney. The defendant, Nysco Laboratories, Inc., appeared as the claimant therein. Judge Meaney wrote a lengthy opinion, containing findings, followed by judgment dated January 22, 1963. Included therein are the following provisions:

"An examination of all the evidence presented compels the conclusion that a daily dosage level of 75 mg. PPA has no significant pharmacological value as a weight-reducing agent and that therefore any representation to the effect that PPA in that dosage is an adequate and effective appetite depressant or that it is adequate and effective in the management or control of obesity, would be a misbranding within the meaning of Title 21 U.S.C. § 352(a). The court finds that the labeling of claimant's product Unitrol represents that its sole active ingredient PPA is adequate and effective for the above purposes and consequently that this product is to be condemned according to the provisions of Title 21 U.S. C. § 334(d).

"Since the court has considered the biological and physiological effects of PPA, and the general character of the labeling which represents that PPA depresses the appetite with a consequent significant loss of weight, not confining its opinion to the greater claims made by the labeling in the instant case such as a loss of fourteen pounds in fourteen days, it feels that its conclusions are dispositive of all of the cases involving this product which are presently before the court.

"This opinion shall serve as findings of fact and conclusions of law.

\*  \*  \*  \*  \*

"ORDERED, ADJUDGED, AND DECREED that the articles seized in each of these actions are misbranded as alleged in their respective Libels of Information, within the meaning of 21 U.S.C. 352(a), and pursuant to 21 U.S.C. 334(a), are condemned and forfeited to the United States of America, \* \* \*

"ORDERED, ADJUDGED, AND DECREED that pursuant to 21 U.S. C. 334(d) and (f) (2), the United States Marshal in and for the respective Districts in which each of the articles have been seized shall destroy the seized articles and make return to this Court, but this provision shall be stayed \* \* \* pending the final disposition of Claimant's appeal to the United States Court of Appeals for the Third Circuit."

Undoubtedly the granting of the stay against destruction of the drug was to preserve the claimant's right of appeal, otherwise it would have been rendered moot. See United States v. 3 Unlabeled, etc., Dried Mushrooms, 7 Cir., 157 F.2d 722.

The said judgment has the effect of an injunction, restraining the claimant from distributing and marketing the seized

drugs. As previously mentioned, those drugs remain in the possession of the Marshals.

The plaintiff contends that the said determination in the New Jersey court is res adjudicata of the issues in the subject action.

The claimant in the New Jersey action is Nysco Laboratories Inc., hereinafter called the Corporation. The defendants in the subject action are the Corporation and its president, Eugene J. Yoss. They admit that he is the president and has a voice in the policies and activities of the Corporation. (Par. 3 of the answer)

The Corporation in its answer admitted the allegations in paragraph 4 of the complaint, viz.:

"Said defendants have been and are now engaged in the business of manufacturing, packaging, labeling, selling and distributing in interstate commerce, articles of drug consisting of timed disintegration capsules containing 75 milligrams of phenylpropanolamine hydrochloride, timed disintegration capsules containing 50 milligrams of phenylpropanolamine hydrochloride, a straight 25 miligram tablet of phenylpropanolamine hydrochloride, chewing gum containing 25 milligrams of phenylpropanolamine hydrochloride, and a capsule containing phenylpropanolamine hydrochloride combined with vitamins and minerals."

The defendants admit that the labeling, alleged in paragraph 5(c) of the complaint is part of the labeling they use for the drugs. The paragraph is lengthy. A portion thereof is quoted, viz.:

"Each capsule contains 75 mgm. Phenylpropanolamine Hydrochloride in a special timed disintegration base * * *.

"Phenyl Propanolamine Nyscaps aid in weight reduction and control by curbing the appetite, thereby making it easier to adhere to a low caloric diet. * * *

"Phenylpropanolamine Hydrochloride is useful as an appetite suppressant in the dietary control of obesity and in reduction of maintenance of weight levels. * * *

"Easy-Slim works as an adjunct in the control of obesity.

"Easy-Slim works in two wonderfully clinically proven ways to slim off excess dangerous pounds. It acts to reduce craving for foods and acts as a stimulant to increase physical and mental activity, thus burning up unwanted calories."

The defendants further admit, in paragraph 7 of their answer, that the Corporation induces purchase of the said drug on the basis of representations made in labeling material that the said drug is an over-the-counter appetite depressant product and with adequate and effective treatment to aid in weight reduction by controlling the appetite.

Judge Meaney held that the product has no significant value as a weight-reducing agent nor as an appetite suppressant nor is it effective in the control of obesity and that it was misbranded.

It is apparent that the determination by Judge Meaney is res adjudicata as to the Corporation in the subject action. The latter action is based on the same claim between the same parties or those in privity with them. See Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195. The defendants do not seriously dispute identity of subject matter and parties, for in their brief they state that "in the instant case, there is no question but that the Unitrol case, (decided by Judge Meaney) upon final determination, would be res adjudicata to the instant case." Surely to be res adjudicata, after affirmance on appeal, it must be held to be res adjudicata at the time judgment was entered in the court below. It continues to be res adjudicata until reversed on appeal.

The defendants' principal plea is for a stay of the subject action pending the outcome of the appeal of the New Jersey judgment upon the ground that "the injunction (in this action) will have the effect of destroying the defendants'

business with respect to the product PPA." In this connection, it may be asserted that the defendants' business is now partially destroyed for Judge Meaney has ordered that all of the defendants' PPA drugs, seized by the Marshals in some twelve jurisdictions, shall remain in their possession and not be returned to the Corporation. The defendants appear to rest content with this ruling. The Government in pursuance of that ruling would be justified in instituting actions for seizure in every other jurisdiction, where the drugs are located. The grant of an injunction in this case obviates a multiplicity of suits.

■ In furtherance of their plea against an injunction, the defendants contend that such relief is inequitable and contrary to settled law.

The statutes previously alluded to empower the district courts "to restrain" the introduction or delivery for introduction into interstate commerce of any drug that is misbranded. A drug is misbranded if its labeling is false or misleading in any particular.

In Walling v. Brooklyn Braid Co., Inc., 2 Cir., 152 F.2d 938, a case involving the Fair Labor Standards Act, which Act does not provide for injunctive relief, the Court wrote:

"In a case like this it is self-evident that the public interest is directly concerned in the proper enforcement of a valid wage order. Good administration of the statute is in the public interest and that will be promoted by taking timely steps when necessary to prevent violations either when they are about to occur or prevent their continuance after they have begun. The trial court is not bound by the strict requirements of traditional equity as developed in private litigation but in deciding whether or not to grant an injunction in this type of case should also consider whether the injunction is reasonably required as an aid in the administration of the statute, to the end that the Congressional purposes underlying its enactment shall not be thwarted. See Skidmore v. Swift Co., supra, 323 U.S. at 133 [134]–140, 65 S.Ct. 161–164 [89 L.Ed. 124]."

In United States v. W. T. Grant Co., 345 U.S. 629, 83 S.Ct. 894, 97 L.Ed. 1303, involving a claim of violation of Section 8 of the Clayton Act, 15 U.S.C. 19, prohibiting interlocking directorates, it was held that the trial court did not abuse its discretion in denying injunctive relief. The accused directors resigned thus, as the trial judge stated, there "is not the slightest threat that the defendants will attempt any future activity in violation of Section 8."

At page 633, 73 S.Ct. at page 897, the Court said:

"The purpose of an injunction is to prevent future violations, Swift & Co. v. United States, 276 U.S. 311, 326, [48 S.Ct. 311, 72 L.Ed. 587] (1928), and, of course, it can be utilized without a showing of past wrongs. But the moving party must satisfy the court that relief is needed. The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive."

The danger of recurrent violation by the defendants is not in dispute in that the defendants assert that they desire to continue to market the PPA drug with all its misbranding, despite the adverse ruling of Judge Meaney.

The motion is granted. Settle order on five (5) days' notice.